Our next case is Gallimore versus City of Opa-Locka. All right, we'll hear first from Mr. Pizzi. Morning. Pleased to court. I think that the standard for granting summary judgment in the U.S. District Court level is very, very clear and the court made three errors in granting summary judgment. Number one, the District Court did not, should have denied summary judgment because there were very hotly contested material issues of fact. In fact, almost every single, every single core issue relating to the prima facie case of age discrimination under the CEA and retaliation and gender discrimination under Title VII were with, you had diametrically opposed disputed facts on both sides. Can I ask you just a quick question, maybe to focus, just speaking only for myself. Do you think that one of the three claims that you've brought, age, gender, or retaliation, is the strongest? I think that the... I'll confess, like I think your age claim is the strongest. Yeah, I think the age claim is the strongest because this court has held repeatedly that where there's direct evidence of discrimination in the record, you don't use the McDonnell-Douglas standard. And this court has said umpteen times that once there's direct evidence of age discrimination, and commissioners and other influencers are stating, you're too old, you know, we need to get younger people. We, at that point, once those, those statements are in the record under oath by multiple parties repeatedly... Yeah, I think the, I think the, I too think the age discrimination is the strongest. I think the others have real problems. But I want to talk a little bit about, you characterize the age discrimination case as being a direct evidence case. Speaking for myself, I don't see it as direct evidence. I think there is evidence of ageism, but it's coming from the mayor, it's coming from a commissioner, it's not coming from Pate, the decision maker. So it seems to me, the most you can say is that it is circumstantial evidence of it. And I was sort of struck, are you traveling solely on a direct evidence theory? Because it's kind of interesting, in the district court, you had a different argument. In the district court, if I have it right, you traveled on a circumstantial evidence theory. And you turned it around and said, this is a direct evidence case. I think you have a direct evidence. I think you have a circumstantial case. And I think this evidence is a circumstance that can be used. But isn't this really a circumstantial case? I think no, and I'm going to explain why. Number one, I think that the premise that the city manager, John Pate, is the ultimate decision maker, and that what the commissioners say and the mayor say is irrelevant. Number one, it's directly disputed and contravened in the record by the Dobson, the former chief's declaration, by Gallimore's declaration and by an affidavit by Pate himself. But you're not, just so I'm clear, though, you're not going to die on the hill that this case has to be a direct evidence case, are you? I mean, I guess I took your brief to be arguing two things sort of in the alternative. You think you can make the direct evidence case, but you do cite our convincing mosaic analysis in Smith to say, in effect, you can do it direct or circumstantial. And I guess I took you to be saying, if I can't quite make the direct case, then I can make a strong circumstantial case at the very least, if not under McDonnell Douglas, maybe under convincing mosaic. I think we win under this case's precedence on direct evidence, and it was improper to grant summary judgment with those statements in the record. That was for the jury. Once that direct evidence came in, that should have been assumed to be admitted and gone to the jury. End of story. However, I think an even stronger case, an equally strong case, is under the circumstantial evidence, because under the ADA, you just have to show that you're over 40, in this case over 50, been there 26 years, and will let go. There was no valid reason to let you go. The reason to let you go is hotly disputed and is hotly contested, to say the least, and you were replaced by younger people. Right. So just so that I'm clear then, and I know that Judge Newsom is really asking the same question, as for age discrimination, it would be fair to say you're traveling under two theories, not one. Correct. Yes. Both circumstantial and direct. Yes. Okay. But I also want to go back to, aside from the, I want to respectfully disagree on the other two claims. I think, I mean, clearly, there was enough evidence in the on the age claim that she should not- Let's hold the age claim aside for a moment. Let's talk about the retaliation claim. How do you get to a jury on the retaliation claim? We get- You've got to show that she engaged in a statutorily protected conduct. There's no dispute about that. That's protected by Title VII. Two, that she suffered an adverse action. You've certainly shown that. But third, that there is some causal relationship between the two events. The problem that I have, just speaking for myself, is I don't see how you established the third prong. You've got a two-month delay, but we've held two months standing alone is not enough. And then when I looked to see, is there anything more than the two months, I couldn't find anything. What am I missing? What is there beyond the two months that will enable a jury to fairly find in your favor on this causal connection part of the analysis? Thank you for the question, Judge Marcus. Judge Marcus, it's not just the two months. It is the fact that she, the following, A, she filed the charge on March 2021. B, though not outcome determinative, two months later on May 2021, she gets fired. But C, there's evidence in the record that she met with Kiara Ward, the human resources director, who indicated she was going to inform the city of her repeated claims about violations of Title VII and other. But you know what's interesting about that? That's what she says in a declaration that follows on the heels of a deposition. And in the course of the deposition, she's asked squarely, did you ever have any conversation with anyone at the city regarding your EEOC complaint? No, she says. She's asked a second time, did you ever hear anyone discuss your EEO complaint? Again, she says no. And then third, she's asked for the last time, when I say anyone, I'm talking about anyone at the city, okay? Is the answer no? Gallimore, yes, it is no. So three times during her deposition, she was asked whether she discussed the EEO complaint with anyone at the city, which would include Pate, Ward, and anybody else. And she says no. How do I disregard that? We've got case law that says you can't later come in with a declaration that said at war with your statement in a confrontation setting of a I don't see any such explanation. If that be right, how could we give any credence to the out of court statement coming in from your client who says, yeah, and I told Ward, and she said, blah, blah, blah. You have nothing from Ward. You don't have, she was never deposed. She doesn't have an affidavit or a declaration saying, it's true that I had this conversation with Gallimore, and I passed it on to Pate. I have nothing other than the sworn testimony under oath of your client, and something later that purports to come up with a different answer. What am I missing? I think two things. I think the fact that a fact or something was not recalled in a depo, but is later put in a statement, if it's truthful, I think that's a credibility issue that's subject to cross-examination. Oh, but we have the sham affidavit doctrine, right? And what we've said is if there's testimony on something, and then unilaterally and without real explanation for why there's a change, there is a declaration that says the exact opposite, then the court is permitted to disregard that later declaration. So I just want to give you opportunity to address that. Well, I would say I don't think it was a sham affidavit because I think you're right, there wasn't a statement, any evidence from Ward, but I would note that the city, other than a records custodian who had no personal knowledge of Rogers, Ward works for the city. I think it's interesting that the city did not put forth any evidence to rebut that statement. And finally, on Judge Marcus's point, I think that in addition on the retaliation claim, one compelling factor is that between March and May, March 2021 and May 2021, there's nothing in the record to suggest that anything happened that would cause a termination that was legitimate, according to our version of the evidence, other than the fact that she filed the EEOC charge. And I reserve the balance of my time. Thank you, Mr. Pizzi. Thank you. All right, we'll hear next from Mr. Raleigh. Good morning, your honors, and may it please the court. John Raleigh for the defendant, Appali, City of Opelika. The city respectfully requests that this court affirm the district court's entry of judgment in its favor on all three counts. The district court properly entered judgment in the city's favor on the retaliation claim. Can I ask you a favor, just for my own purposes, in the same way that I sort of told him that I think his strongest claim is age, I'll tell you I think his strongest claim is age. So, would you just start there for me? Absolutely, Judge. So, the age is but for causation, first and foremost. That is a stronger threshold causation argument than the gender claim. So, it's either the employer acted because of the age or it didn't. And here in this case, the district court properly determined that the plaintiff failed to establish a prima facie case because of that. There was no evidence of intentional discrimination by Mr. Pate, the final decision maker. There was some... There's a lot of smoke, right? I mean, if we are in, as I think we at least arguably are, if we're in convincing mosaic land instead of McDonnell Douglas land, boy, I mean, it seems to me there's a lot of, you know, from her own declaration, from, you know, sort of from the mayor, from the former chief of police, a lot of, I don't know, a lot of ageism in the air. Respectfully, your honor, I believe we're under McDonnell Douglas. Why is that? I mean, haven't we said you can proceed under either of two theories, McDonnell Douglas or convincing mosaic? Yes, there's absolutely no direct evidence. I'll put that out. I agree. Yeah. Circumstantial because... But you would agree this is circumstantial evidence. We can agree it's not direct. It doesn't come from the mouth of the decision maker. But you've got, as Judge Newsom put it, some pretty strong statements of ageism here. So what I would say to that, Judge Marcus, is that there is no evidence in this record affirmatively that any commissioner or mayor pressured Pate specifically to terminate or allegedly terminate or demote Ms. Gallimore back in October of 2020 because of age. And that goes back to the Bud 4 causation standard. There is evidence in the record from John Pate's case, from James Dobson's case. Those are separate lawsuits that have been litigated in other courts. Nothing regarding the declaration submitted by those two individuals have any bearing on whether any of the commissioners or the mayor allegedly pressured Pate to take any action. There's simply no evidence to support the contention that there was any pressure to Pate by any member of the commission to demote Ms. Gallimore back in October of 2020 or separate... Let me ask my question differently. Let's assume this is a circumstantial case. Let's assume that Mr. Pizzi is traveling under McDonnell Douglas. The problem I have is, first, I think there's an error of law the district court made. The district court, in his order, when talking about the four things that you have to show, the district court said, we look at whether on the primer face you're showing, she was a member of the protected age group of persons between 40 and 70. No question she falls into that. Second, she was subject to an adverse employment action. No question there's an adverse more than one, but certainly termination is an adverse employment action. And the fourth item, she was qualified for her job. But then when the district judge lays out the standard for the third thing, he says, the district judge, she was treated less favorably because of her age when compared to similarly situated comparators who were not members of the protected class. That's certainly true. That would be one way to come at the third prong, and there is no evidence of similarly situated comparators. The problem is that, and he cites Chapman, if you look at Chapman, and I remember it, we heard it in Bonk, the court wrote, one method a plaintiff can use to establish a prima facie case for an idea of violation is by showing that he or she, one was a member of the protected group. That's easy. That's been established here. Two was subjected to an adverse employment action. That's easy as well. It was established here. Third was qualified to do the job. There's not an issue about that here. Four was replaced by or otherwise lost the position to a younger individual. That's not what Judge Moore said. What Judge Moore said, and I just read it to you, was the third prong, just looked at the comparator. The comparator is only one way, but if she indeed was replaced by someone who was a younger person, in this case, I take it, she was replaced by someone who was 36 or 37. Why hasn't that established the elements of McDonnell Douglas? And then you're left with arguing, even if that's true, we had a legitimate reason for dumping her, and he's got to then come back and show that it's pretextual. But I'm not there on that issue. I'm on this question. Didn't the district judge miscite the law on that third prong by ignoring completely what we have unambiguously held is one way to establish one prong of McDonnell Douglas, that is to say, replaced by or otherwise lost the position to a younger person? Have I got the law wrong here? No, Judge, you have not. But in this case, we can apply, I believe this court is very familiar with, of course, on the Lewis case. I think the comparator issue is central to the age discrimination. Age discrimination applies McDonnell Douglas, and the Lewis court specifically. But the problem is that that's only one way of establishing, that's only one way of establishing a prima facie case under McDonnell Douglas. And it doesn't speak at all to if you're replaced by somebody who falls outside the protected group. I agree. So let me read it to you this way. In another case, Maynard versus the Board of Regents, 2003 from this court, we held that McDonnell Douglas requires a showing that the plaintiff, quote, was replaced by a person outside his protected class, or it's in the disjunctive, or was treated less favorably than a similarly situated individual outside his protected class. He's traveling on the first prong, not the second. And it seems to me, if indeed, Ms. Gallimore was replaced by a 36-year-old woman as the deputy chief of police, he's, for McDonnell Douglas purposes, established that third prong. Isn't that right? That's fair, Your Honor. And let's assume that he established a prima facie case of age discrimination. There's absolutely no evidence. So you would agree with me, would you not, that the district court labored under a misapprehension of the basic McDonnell Douglas standard? I would agree with that premise based on the case law that you just read to me, Judge. Absolutely. Okay. So then let's get to the question of legitimate reason and pretext, which is really all that's left with this age discrimination issue, I think. So there's two adverse actions here, alleged adverse actions. The first, we do not dispute that it's an adverse action, obviously, the October 2020 demotion. But that was a direct response, and there's undisputed evidence on this regarding a result of the Miami-Dade assessment that found leadership was lacking in the Opa-Locka Police Department. You have the chief of police who was terminated. You have the assistant chief around this time who was demoted. Those are legitimate reasons that the plaintiff failed- Were both of them in the age class? They're both 49 at the time of the termination, or sorry, the time of Dobson's termination and Gallimore's demotion. Yes. And so there's been nothing but proffered evidence that these reasons are bogus, they're lies, they're false. That's not good enough under this course pretext. Let me ask you the question. Please go ahead. Let me ask the question this way. Why can't he take to a jury the question of pretext with the following pieces of evidence? One, he cites mayor and the city commissioners, including the state of the city addressed by Mayor Pidgott, where he said that the city, quote, needed to bring in much younger and more energetic people. Two, a statement from Commissioner Alvin Burke to her where he said, quote, that people were tired of the same old people, and that if the police department had younger officers, they would not have had the health issues that older officers like myself had. Three, Mayor Pidgott told me and Chief Dobson that he wanted younger people in positions of leadership in the police department. Four, Dobson swore in a statement that there were times when the mayor, at city meetings and in private meetings, said that he wanted younger leadership in the police force. That may all be false, but assume we accept it as true as we must at this stage in the proceedings. Why doesn't that at least create a debatable question about a material fact suggesting that the issue of pretext or legitimate reason ought to go to the jury? Because your honor, none of those individuals that you identified are decision makers. There's one decision maker. No, but I agree, and that's why it isn't direct evidence. But it's undeniably circumstantial evidence, isn't it? Respectfully, no, because there's no link. If there was a link where a commissioner or the mayor or someone else said, hey, John Pate, take this action against Ms. Gallimore because of her age or because of her gender, I would agree with you. Or hey, maybe we should look to get rid of the assistant chief or some other comment that's not entirely direct, but close to there or some other type of circumstantial evidence. But here we just have generalized, undated, untimed statements. We don't know who these statements were made to, when they were made. I don't believe that's enough to get to a jury on that. So can I ask you again, just to back up, the first fork in the road is direct versus circumstantial. I agree, no direct. We're in circumstantial land. Once you're in circumstantial land, there's another fork in the road. McDonnell Douglas, convincing mosaic. We've been grinding and grinding and grinding about McDonnell Douglas here. What about convincing mosaic? Here's the thing. I'm a loud and proud McDonnell Douglas skeptic. I think it's kind of made up. I don't think it really has any footing in the text of Rule 56, let alone the ADEA or Title VII. But convincing mosaic squares up pretty well with what Rule 56 is all about. And when I read the same evidence that Judge Marcus just read to you, this bulleted list about sort of the nastiness, sounds pretty convincing mosaic-ish to me. Why not? I'd say first and foremost, as a threshold issue, that theory was never traveled under below. And so to raise that for the first time on appeal... Well, but I mean, I'm not really sure. That's not a standalone claim, is it? It's just a way of articulating the claim of age discrimination. You can travel one path or another. I don't think that's like a forfeitable theory of the case. Do you think that he's forfeited the right to make an additional or a different argument? The issue was preserved, clearly. He alleged age discrimination in violation of the ADEA statute. And he's made some different arguments in support of that issue. I mean, we've got lots of law out there that says unambiguously, you don't abandon an issue simply by making a different argument. I agree. And I'm familiar with that case law. I guess what I would say to Judge Newsom and Judge Marcus' questions is there's no evidence of a convincing mosaic or any other theory as well. Again, I don't believe there's enough evidence in this record to get to a jury on age or gender. So can I ask you a question just about mechanics? How is the city manager selected? Is the city manager elected or is the city manager appointed? The city manager is appointed by majority vote of the city commission. So if the city commission is making noise about wanting younger people, isn't it a fair inference? And we have to make all fair inferences on behalf of the non-moving party. Isn't it a fair inference that the city manager would be responsive to the commission? Again, those statements, and I'm familiar with the statement you're referring to, Judge Rosenbaum, those statements were made in the Pate case and the Dobson case. There is nothing relating to Gallimore. That's a muddled... I guess I'm asking about the more general statements about wanting more energetic people, younger people, that type of thing. It could be if that evidence existed with respect to Ms. Gallimore. And it's just some generalized, we don't know when that statement was made, who specifically made it, in what context it was made. These are, again, I think we'll go back to our deposition. I know that was discussed at nauseam. That's a dispositive testimony in this case. And in her deposition, Ms. Gallimore explicitly testified multiple times. I gave her multiple outs. What evidence do you have? What evidence do you have? None, none, none. I have my speculative beliefs. I have my generalized statements. Look at my complaint. That's not good enough to get past summary judgment. If I could briefly touch on the retaliation claim, because I know that was brought up. I would agree, Judge Marcus, there was nothing to link the Kiera Ward, even assuming that she had a conversation with Ms. Ward, there's nothing to link Ward actually talking to Pate about that. And indeed, you have a deposition from Pate himself, where he specifically asked the question of whether or not there was any talk about a retaliation regarding Gallimore. And he says, no, no, no, and no. Correct. And that's the direct evidence in this case, Judge Marcus. That's the only direct evidence. Agreed. Mr. Pate testified explicitly, never retaliated, never discriminated. He was the final decision maker. So I see that my time is up. I thank you for your time. And we rest on our brief and request affirmance. Thank you, Mr. Raley. Mr. Pizzi, you've reserved five minutes. I'm just going to make three points. Regarding the ADAA age claim, clearly, the trial court erred, and she established her prima facie case. And as has been noted, it's in the briefs, but I'm beating a dead horse. She did note in the record, and it was unrebutted, that she was replaced by Jenkins, who was 36, and couldn't even pass the Swatch and Test, and wasn't even qualified. So not only did it show, did she meet the standard by showing she got replaced by a 36-year-old Jenkins, but she also noted, and it was unrebutted, that Jenkins, even though she didn't have to show that, all she had to show was that she was replaced by Jenkins, who was 36 and younger. But she even went beyond that and showed that Jenkins couldn't even pass the Swatch and Test, and she was replaced by someone who was not only younger, but wasn't even qualified. So she went beyond what she was required to do. Second point I would note that regarding the issue of whether or not Mr. and I, Judge Rosenbaum, you asked an excellent question, which shows an understanding of how municipal government actually works. If anybody thinks that the city manager who can only survive with three or four votes and is hired and fired by the commission is going to ignore the fact that three or four commissioners are saying, hire a younger person, and to anybody who thinks that a city manager like Mr. Pate, who's hired and fired by the commission, and commissioners and the mayor telling him, I want younger people, get rid of these old timers, I think that that's, I would be happy to let the jury listen to those statements and determine whether or not the manager could be influenced by it. And that's the problem is that on summary judgment, that inference about the inference from that evidence should have gone in Gallimore's favor, and not the favor of the city. Finally, I would note that Pate actually submitted a declaration that even though he was a city manager, and he was the ultimate decision maker, he said on the road that he fired the police chief, because he was pressured by the commissioners. And obviously, if he's going to be pressured to fire the police chief, we can't come and say he was independent and couldn't have been pressured to fire the deputy police chief. And finally, I would note two final points. And that is that it's in the record, whether or not he was pressured. Pate said he was pressured and Gallimore and Dobson both submitted declarations stating, quote, in a meeting between Pate, Ward, and Gallimore, Pate said he was being pressured by the commissioners, and it was influencing his decisions. So it's kind of how that, how a direct statement by Pate that he was being influenced by the commissioners to fire people, how that doesn't get to the jury, and somehow gets construed in the city's favor. And then the final point I would make is that in terms of the issue of demotion versus terminating, I think Judge Marcus, you said it clearly. I mean, there are multiple statements in the record. If there's one thing that's clear in the record, that is that whether or not there was a legitimate reason to demote her based upon the county report is hotly contested and refuted by her statements that she was explicitly told that that was not a basis for the demotion. And finally, with regard to the termination, the city says she didn't show up on May 12th, 13th, and 14th, and in her declaration and depot testimony, she said, I did show up on those days. They fired me, and in fact, they locked me out. So I think that for all these reasons, I want to thank you for your time. I don't need the extra time. I think I ask you to reverse the trial court. Summary judgment should not have been granted, and send it back with direction to set the trial. I thank you for your time. All right. Thank you. Thank you, Council.